STATE OF NEW YORK
UNITED STATES DISTRICT COURT: WESTERN DISTRICT OF NEW YORK

---

THOMAS THOMPSON,                                                        Index No.:

                            Plaintiff,

vs.                                                                                          **COMPLAINT**

NEW YORK STATE POLICE TROOPER
KENNETH KLINE, NEW YORK STATE POLICE
TROOPER JAMES COLLINGS,
FORMER STUEBEN COUNTY ASSISTANT
DISTRICT ATTORNEY TODD J. CASELLA,
NEW YORK STATE POLICE SERGEANT JOHN ROE,
NEW YORK STATE POLICE LIEUTENANT MICHAEL MCDARBY,
SHAWN MOSKO, and PATRICK MOSKO

                            Defendants,

---

**JURY DEMAND**

Trial by Jury on all issues is demanded

**PRELIMINARY INTRODUCTION**

1.       This is a civil rights action brought pursuant to 42 United States Code ("U.S.C.") § 1983 for the violation of Plaintiff's right to be protected against unlawful searches and seizures under the 4th Amendment of the United States Constitution, as well as his 1st Amendment right to redress a grievance against his government. Specifically, the seizures have come in the form of malicious and meritless prosecutions on the part of the above actors, all of which have resulted in favorable terminations on the part of the Plaintiff. The claims arise from a series of incidents that began in August of 2014 and extended through September of 2017. Throughout this timeframe, the Plaintiff was

subjected to roughly 30 separate criminal charges ranging in severity from violations to felonies. Of these numerous actions prosecuted against Plaintiff, not a single one resulted in a conviction or guilty plea. The one common thread through all of these actions against Plaintiff was the prosecutor, one Todd Casella, and/or the investigating officer who initiated the charges, one Kenneth Kline.

## PARTIES

2. Plaintiff, Thomas Thompson, currently resides at 608 Ridge Road, Webster, New York 14580.

3. Upon information and belief, New York State Police Trooper Kenneth Kline is employed by the State of New York and was acting in such capacity during the events that give rise to this lawsuit.

4. Upon information and belief, New York State Police Trooper James Collings is employed by the State of New York and was acting in such capacity during the events that give rise to this lawsuit.

5. Upon information and belief, Stueben County Assistant District Attorney Todd Casella is employed by the County of Stueben and was acting in such capacity during the events that give rise to this lawsuit.

6. Upon information and belief, New York State Police Sergeant John Roe, is employed by the State of New York and was acting in such capacity during the events that give rise to this lawsuit.

7. Upon information and belief, New York State Police Lieutenant Michael McDarby is employed by the State of New York and was acting in such capacity during the events that give rise to this lawsuit.

8. Upon information and belief, Defendant Patrick Mosko resides, resided, and/or does business, at the time of the events of this lawsuit, at 9350 Strobel Rd. in Arkport, New York 14807, within the Western District of New York.

9. Upon information and belief, Defendant Shawn Mosko resides, resided, and/or does business, at the time of the events of this lawsuit, at 9350 Strobel Rd. in Arkport, New York 14807, within the Western District of New York.

## JURISDICTION

10. Plaintiff brings this action to recover damages for the violation of his civil rights under the First and Fourth Amendments of the United States Constitution, codified at 42 U.S.C. § 1983 and as bestowed upon the states and its citizens through the Due Process Clause by the Fourteenth Amendment of the United States Constitution.

11. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1332 (federal question) and § 1343 (civil rights).

12. Declaratory, injunctive, and equitable relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202.

13. Costs and Attorney's fees may be awarded pursuant to 42 U.S.C. § 1988 and Federal Rules of Civil Procedure ("FRCP") Rule 54.

14. As mandated by the Supremacy Clause, in relations to actions brought pursuant to 42 U.S.C. § 1983, plaintiff does not have to comply with Municipal Law Section 50-e with respect to filing a Notice of Claim with regard to Federal Causes of Action.

15. At all times here mentioned, Defendants were acting under the color of state law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## VENUE

16.    This action properly lies in the Western District of New York, pursuant to 28 U.S.C. § 1343(3), because the claims arose in this judicial district and the Defendants reside in and / or do business in Steuben County.

## FACTUAL BACKGROUND

17.    The earliest contact between Plaintiff and Defendant Kline was in August of 2014. At the time of this incident, Plaintiff was living at 1896 Acomb Road in Dansville, New York. One day in August of 2014, Plaintiff noticed that Defendant Kline was on his property. Evidently, Defendant Kline was investigating a call that he had received regarding an animal which had died on Plaintiff's property. Plaintiff owned a farm at this point, so the death of animals was not a wholly uncommon occurrence. Defendant Kline was deep into Plaintiff's property and was attempting to gain access to a barn when Plaintiff noticed his presence. Plaintiff would eventually file an internal affairs complaint against Defendant Kline, as he felt that Defendant Kline had violated his rights by coming onto his property without asking Plaintiff for consent or having obtained a warrant.

18.    The next interaction between Plaintiff and Defendant Kline would occur on or about March 27th of 2015. Plaintiff was driving a 2002 Chevy Tahoe with Alabama dealer plates. Plaintiff had stopped with the truck at the Wayland Food Mart on route 21, and Defendant Kline was also present at that time. See Ex. A at pg. 17. Upon seeing the vehicle, Defendant Kline remarked to his partner that the vehicle's condition and the fact that it had Alabama dealer plates had aroused his suspicion, and that they would execute a traffic stop on the individual who was operating the vehicle. Defendant Kline waited for

the Plaintiff to make his way to the vehicle and commenced a traffic stop on Plaintiff without any legal basis to do so. He executed such stop once Plaintiff had begun to drive down a public highway.

19. During the traffic stop, Plaintiff and Defendant Kline had a disagreement about whether Plaintiff had violated the Vehicle and Traffic law by having low tread on his rear tires. Plaintiff believed he was not in violation of the law as he was operating as a dealer at the time. Defendant Kline would eventually issue the Plaintiff a ticket for having a bald tire on the truck.

20. Plaintiff would eventually file a personnel complaint against Defendant Kline in relation to this stop. This was his second such complaint against Defendant Kline. Plaintiff felt that he had been stopped without probable cause and wished to have his concern addressed. This complaint seems to be the event which caused Defendant Kline to specifically target Plaintiff in what appears to be a retaliatory effort.

21. ` The complaint made by Plaintiff in relation to the March, 2015 traffic stop would purportedly be investigated by Defendant Sergeant John Roe of the New York State Police. The investigation would ultimately conclude with Defendant Kline being found to not have engaged in any wrong doing. However, as early as May of 2015, Sgt. Roe had begun to draft a complaint against Plaintiff, as Roe, in an attempt to defend his fellow officer, indicated that Plaintiff lied when he filed the personnel complaint, thereby committing the offense of Offering a False Instrument for Filing in the 1st degree. This would mark the first of three attempts to bring this charge against Plaintiff.

22. Defendant Sergeant Roe and Defendant McDarby, numerous times in the course of their investigation of Plaintiff, attempted to have him perjure himself and deceive him

        into signing statements that were false. Plaintiff resisted those attempts and signed a truthful statement on April 10, 2015.

23.        In roughly August of 2015, Defendant Roe and Defendant Kline continued to push for Plaintiff to be charged with Offering a False Instrument for Filing in relation to the April 10, 2015 statement that Plaintiff had authored. <u>See</u>, Ex.A at pg. 75. This was done after Defendant Roe and Defendant Kline's superiors had specifically told said Defendants not to pursue the matter any further. <u>See</u>, <u>Id.</u> at pg. 76.

24.        On August 14th, 2015, Defendant Kline obtained an ex-parte temporary restraining order against Plaintiff from the Village of Dansville Court. Plaintiff was not aware of this order until sometime later and was baffled to learn of its' existence, as he has not had any contact with Defendant Kline since March of 2015.

25.        This restraining order seems to have been preemptively issued, as exactly a week later, Defendant Kline would engage in what seemed like a targeted effort to harass Plaintiff.

26.        On August 21, 2015 on Maple Street in the town of Dansville, Plaintiff was subjected to a traffic stop by Defendant Kline. At this time, Plaintiff was issued 6 tickets for traffic violations, four of which were ultimately dismissed on October 10, 2015. Given the lack of probable cause to issue said tickets, they appear to be a direct retaliation by Defendant Kline, in response to his displeasure of being subjected to a personnel complaint arising from his previous actions against Plaintiff in March of 2015.

27.        On the evening of August 21, 2015 Plaintiff was involved in an incident with his then live-in girlfriend and fiancé, Stacie Taber. As a result of this incident, the authorities arrived at Plaintiff's residence, 1896 Acomb Road. Plaintiff would eventually be charged

with two criminal offenses from this incident, both of which would ultimately be dismissed.

28.     After August 21, 2015, both Defendants Kline and Casella began to target Plaintiff due to retaliatory motives on the Defendants' part. On or about September 1, 2015, Defendant Roe and McDarby formally charged Plaintiff with Offering a False Statement for Filing in the First Degree in violation of Penal Law §175.35, a Class E felony. Plaintiff was improperly and erroneously indicted on said charge as of December 8, 2015. Within a relatively short period of time, Plaintiff would be charged with numerous offenses, all of which would ultimately be dismissed. These charges would include a single count of the filing of a false instrument in the first degree; 16 different charges under New York State's Agriculture and Markets law; and a single count of violating the New York Secure Ammunition and Firearms Enforcement Act of 2013, for allegedly being in possession of high capacity firearm magazines.

29.     On February 25, 2016, the Defendants second attempt to bring the charge of Offering a False Instrument for Filing in the first degree ended in failure, as the Grand Jury indictment against Plaintiff was dismissed by order of the Honorable Joseph W. Latham. The indictment was dismissed as the prosecution had failed to provide sufficient evidence to support each and every count of the indictment. However, the order allowed for the Stueben County District Attorney Brooks Baker to again represent the charge to a Grand Jury, an opportunity which was again undertaken by said District Attorney.

30.     On April 26, 2016, sixteen charges of violating New York's Agriculture and Markets law against Plaintiff were presented to a Grand Jury in Stueben County. This Grand Jury would ultimately indict Plaintiff on all sixteen counts. However, Plaintiff

would never be prosecuted on any of these charges, as on September 13, 2016, the Honorable Joseph W. Latham once again dismissed the Grand Jury indictments against Plaintiff. The single felony count under New York Agriculture and Markets Law was dismissed due to prosecutorial misconduct in presenting the case to the grand jury. The prosecutor in that case, as in almost all cases involving Plaintiff, was Defendant Casella. Judge Latham held that Defendant Casella had committed prosecutorial misconduct by improperly representing the testimony of past witnesses. The remaining 15 misdemeanor counts were dismissed due to insufficient evidence to support the charges and improper instructions on the part of the prosecutor.

31. It is Plaintiff's belief that Defendant Casella attempted to pursue these frivolous charges against Plaintiff due to personal animus. Such animus can be seen from the various instances of prosecutorial misconduct which resulted in the indictments being dismissed. However, Plaintiff realizes that these actions of Defendant Casella, while unprofessional, are still shielded by the doctrine of absolute immunity.

32. Plaintiff would once again be indicted on the charge of Offering a False Instrument for Filing in the First Degree. Plaintiff was unable to get the indictment dismissed and would eventually take the matter to trial. Plaintiffs' trial on the charge of Offering a False Instrument for Filing in the 1st degree began on July 18, 2016.

33. Two private citizens, Patrick Mosko and Shawn Mosko were two key witnesses for Plaintiff's trial on the part of the prosecution. During the trial, Patrick Mosko made several false statements regarding the sale of the vehicle in question to one of Plaintiff's business associates which Plaintiff had facilitated. It was this sale which was the genesis of the subsequent offering a false instrument for filing charge against Plaintiff.

34. During the testimony by Shawn Mosko, he gave several false statements regarding the actions of Plaintiff. Specifically, Mosko stated that Plaintiff had approached him in an effort to get Mosko to provide an exculpatory statement on behalf of Plaintiff.

35. It is Plaintiff's belief that the statements made by the Mosko's were the product of the improper influence of Defendant Casella on the pair's testimony. This is most apparent at pages 101 and 102 of the trial transcript, where Shawn Mosko declares that he did not recall Plaintiff attempting to procure a statement from Mosko until he had a meeting with Defendant Casella a week prior to the trial.

36. The jury was out for a matter of ten minutes before returning a verdict of not-guilty for the Plaintiff. This marked the third and final time that Defendants Kline and Casella would attempt to prosecute Plaintiff on this charge. However, this would not put an end to Defendant Casella's attempts to see Plaintiff incarcerated.

37. Plaintiff's final encounter with Defendant Casella arose from an incident which occurred on February 26, 2017. While Plaintiff was at his residence of 1896 Acomb Road, Dansville, New York, Plaintiff got into an argument with a severely inebriated Stacie Taber. When Plaintiff attempted to cut off Taber's supply of alcohol, she became violent with him and began to attack the Plaintiff. Plaintiff pushed Taber off of his person as she was attacking him. The Plaintiff then began to flee from Taber so as to call the authorities. As Taber made her way after Plaintiff, she once again lost her balance in her inebriated state and fell as she attempted to walk up the stairs. Defendant Collings then eventually arrived at the residence and separated the pair.

38. After speaking with the Plaintiff, Defendant Collings called Defendant Casella and asked what they were to charge Plaintiff with. See Ex. B at pg. 77. Defendant Casella

informed Collings that he was to charge Plaintiff with the crime of Assault in the third degree. Such an instruction was problematic as the authorities had not yet obtained a statement from Stacie Taber, the complainant in the matter, nor had she indicated Thompson was at fault for her injuries. See Ex. B at pg. 77.

39. Taber would eventually tell Plaintiff that when the authorities did come to take a statement from her, she was pressured into giving a statement which would conform to and support the charge for Assault in the third degree, which Defendant Casella had previously decided to charge Plaintiff with. Ms. Taber informed Plaintiff that Defendant Collings threatened to have her arrested for violating a restraining order that Plaintiff had in place against her if she did not make a statement which conformed to the one demanded. See Ex. B at pg. 77

40. This last attempt by Defendant Casella to see Plaintiff incarcerated once again ended in failure, as the charges would ultimately be dismissed due to the facial insufficiency of the accusatory instruments on July 11, 2017. See Ex. C.

41. The preceding events highlight a continued effort by individuals in the employ of New York State, and its municipal subdivisions, in attempting to have Plaintiff incarcerated. The timeline of events suggests that Defendants Kline and Casella were not motivated by a sense of justice, but rather a desire for retribution against Plaintiff for having the audacity to file a personnel complaint against Defendant Kline. Prior to Plaintiff filing a second personnel complaint against Defendant Kline, Plaintiff had a relatively minor criminal record with only 2 misdemeanor convictions; with one taking place in 1987, and the other in 2004.

42. After filing a personnel complaint against Defendant Kline in April of 2015, Plaintiff was charged with roughly 27 offenses, ranging from violations to felonies, over a three-year period. All of these charges would eventually be dismissed, or in the case of the offering a false instrument for filing charge, result in a not guilty verdict after a trial. Every instance of Plaintiff being charged with a crime in that three-year period involved either Defendant Kline or Defendant Casella, or a combination thereof. This suggests that these prosecutions of Plaintiff were driven by a personal animus toward Plaintiff on the part of the Defendants.

### FIRST CAUSE OF ACTION AGAINST DEFENDANTS CASELLA AND COLLINGS FOR CONSPIRING TO UNLAWFULLY INCARCERATE PLAINTIFF:

43. Plaintiff, Thomas Thompson, repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

44. In order to properly plead a conspiracy claim under 42 U.S.C. § 1983, the plaintiff must allege "(1) an agreement between two or more state actors, (2) concerted acts to inflict an unconstitutional injury, and (3) an overt act in furtherance of the goal." Ciambriello v. Cty. of Nassau, 292 F.3d 307, 324-325 (2d Cir. 2002).

45. The preceding fact portion lays out how Defendants Casella and Collings engaged in a conspiracy in order to inflict an unconstitutional injury upon Plaintiff.

46. On February 26, 2017, the Defendants had entered into an agreement to engage in activity to secure a conviction against Plaintiff for Assault in the third degree.

47. The agreement was made when Defendant Collings called Defendant Casella while at Plaintiff's previous residence, located at 1896 Acomb Road. The Defendants had

agreed that Plaintiff would be charged with Assault in the third degree prior to interviewing the supposed victim. The two Defendants then took steps in order to ensure that Plaintiff would be prosecuted and, in their minds, hopefully convicted of the charge, thereby resulting in his incarceration.

48. Defendant Collings made an overt act in furtherance of the goal when he approached Stacie Taber in the hospital to obtain a statement and preceded to threaten her with arrest if she did not give a statement which would give support to the Assault in the third degree charge, which said Defendants wished to see Plaintiff convicted of.

49. As mentioned, said charge was bogus and ultimately dismissed against the Plaintiff.

### SECOND CAUSE OF ACTION AGAINST DEFENDANTS CASELLA, SHAWN MOSKO, AND PATRICK MOSKO FOR CONSPIRING TO UNLAWFULLY INCARCERATE PLAINTIFF:

50. Plaintiff, Thomas Thompson, repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

51. "To prove a §1983 conspiracy claim, a plaintiff must show: (1) an agreement between two or more state actors **or between a state actor and a private actor**; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).

52. Upon information and belief, the Moskos and Defendant Casella entered into an agreement to produce false testimony against Plaintiff in an effort to convict him of the felonious charge of Offering a False statement for Filing.

53. There is evidence in the transcript of the testimony given by Shawn Mosko at Plaintiff's July 18, 2016 trail which suggests that Defendant Casella met with the Moskos prior to Plaintiff's trial, and that at this meeting, Defendant Casella instructed the Moskos what they needed to say to see that Plaintiff was convicted, despite the fact such statements were not true. This instructed testimony seemingly included events which did not happen but which would support the prosecutions' theory.

54. At page 101-102 of the trial transcript while being examined by Defendant Casella, Shawn Mosko says that he had not been able to recall that Plaintiff had asked him to make a false statement to exculpate Plaintiff until he met with Defendant Casella. See, Ex. A at 101-102.

55. Furthermore, Plaintiff believes that the Moskos were instructed to give false testimony against Plaintiff at the behest of Defendant Casella under the force of threat. This allegation is based upon a subsequent conversation Plaintiff had with Defendant Shawn Mosko, who informed Plaintiff that this was in fact the case.

**THIRD CAUSE OF ACTION AGAINST DEFENDANT COLLINGS FOR UNLAWFUL IMPRISONMENT IN VIOLATION OF THE FOURTH AMENDMENT AS PER 42 U.S.C. §1983**

56. Plaintiff, Thomas Thompson, repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

57. To maintain a claim for false imprisonment, a plaintiff must establish: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement, and; (4) the

confinement was not otherwise privileged. See <u>Bernard v. United States</u>, 25 F. 3d 98, 102 (2d Cir. 1994).

58. In the present matter, the first three elements of the action are easily established. When Defendant Collings arrest Plaintiff on February 26, 2017, he clearly intended to confine the Plaintiff. It is similarly clear that Plaintiff was aware of his confinement and did not consent to the confinement.

59. As to the last element, Plaintiff argues that the confinement was not privileged, in that there was no probable cause to arrest him on that evening for the offense of Assault in the Third Degree.

60. To wit, the complainant, Stacie Taber, did not state that the Plaintiff had assaulted her until Defendant Collings coerced and threatened her to do so.

61. The charge of Assault in the Third Degree was ultimately dismissed for facial insufficiency, with no objection from the People.

62. The inability of Defendant Collings to produce an accusatory instrument which was facially sufficient suggests that there simply did not exists facts upon which a charge could be based. The lack of probable cause is further supported by the fact that the People did not object to the dismissal, suggesting that the People were aware that the underlying charge was meritless.

**FOURTH CAUSE OF ACTION AGAINST DEFENDANT COLLINGS FOR MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AMENDMENT AS PER 42 U.S.C. § 1983.**

63. Plaintiff, Thomas Thompson, repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

64. To prevail on a § 1983 claim for malicious prosecution, a Plaintiff must plead (1) the initiation or continuation of a criminal proceeding; (2) termination of the proceeding in his favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the Defendants' actions." Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997).

65. Plaintiff can show all of these elements existed in relation to him being prosecuted for the offense of Assault in the third degree.

66. On February 26, 2017, Defendant Collings arrested Plaintiff for and subsequently charged Plaintiff with the misdemeanor offense of Assault in the Third Degree.

67. This charge would ultimately be dismissed due to the facial insufficiency of the accusatory instrument.

68. As detailed above, the inability of Defendant Collings to state a factual narrative upon which the charges could proceed suggests that Defendant Collings had no information which would have allowed Plaintiff to be prosecuted for Assault in the Third Degree. Defendant Collings inability to produce a facially sufficient accusatory instrument suggests that there was no probable cause to charge Plaintiff in the first place.

69. Lastly, there is the matter of malice. Malice can be inferred from the repeated unsuccessful efforts on the part of members of the New York State Troopers to have Plaintiff convicted of something. There seemingly came a time when Plaintiff began to be targeted by members of the New York State Troopers as retaliation for having the gall to file personnel complaints against one of their members.

70. Additionally, a lack of probable cause generally creates an inference of malice. Boyd v. City of New York, 336 F.3d 72, 78 (2d Cir. 2003). Further, malice may be

shown by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff. Manganiello v. City of New York, 612 F.3d 149, 163 (2d Cir. 2010). When the lack of probable cause has been adequately pled, there is no need to independently plead malice. Malice can be inferred from the lack of probable cause. Cruz v. City of New York, No. 08 Civ. 8640 (LAP), 2010 WL 3020602, at *6 (S.D.N.Y. July 27, 2010); Bleiwas v. City of New York, No. 15 CIV. 10046 (ER), 2017 WL 3524679, at *6 (S.D.N.Y. Aug. 15, 2017).

**FIFTH CAUSE OF ACTION AGAINST DEFENDANTS KLINE, ROE, and MCDARBY FOR MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AMENDMENT AS PER 42 U.S.C. § 1983.**

71. Plaintiff, Thomas Thompson, repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

72. To prevail on a § 1983 claim for malicious prosecution, a Plaintiff must plead (1) the initiation or continuation of a criminal proceeding; (2) termination of the proceeding in his favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the Defendants' actions." Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997).

73. Plaintiff can show all of these elements existed in relation to him being prosecuted for the charge of Offering a False Instrument for filing in the 1st degree.

74. Defendants Kline and Roe initiated the prosecution of Plaintiff on these charges, as made clear by Sergeant Roe's testimony at the trial.

75. Similarly, Defendant McDarby admitted at Plaintiff's trial for filing of a false instrument that he had prepared criminal complaints in relation to Plaintiff's prosecution and that he had prepared documentation in order to aid Plaintiff's prosecution.

76. Plaintiff had a termination of the proceeding in his favor, in that he was ultimately found not guilty after a trial.

77. There lacked probable cause to initiate the proceeding against Plaintiff, as there was no evidence to suggest that he had made the statement in question with the intent to defraud the state, which is an element of the crime. Indeed, Plaintiff's complaint against Defendant Kline, which served as the statement offered by the Plaintiff and basis for the Defendant's criminal charge against Plaintiff, was truthful in all respects. Additionally, there was no probable cause to continue the prosecution of Plaintiff once the initial grand jury indictment had been dismissed due to a lack of evidence.

78. Lastly, actual malice on the part of the Defendant can be shown by the context of the prosecution. In Sergeant Roe's trial testimony, he admitted that Defendant Kline pushed to have Plaintiff charged with the offering of a false instrument for filing even after they had been discouraged by their superiors to do so.

### SIXTH CAUSE OF ACTION AGAINST DEFENDANT KLINE FOR TAKING RETALIATORY ACTIONS AGAINST PLAINTIFF IN VIOLATION OF THE FIRST AMENDMENT AS PER 42 U.S.C. §1983

79. Plaintiff, Thomas Thompson, repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action. In order to prevail on a retaliation claim, a plaintiff bears the burden of proving, "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the

protected speech and the adverse action." <u>Dawes v. Walker</u>, 239 F.3d 489, 492 (2d Cir. 2001).

80. Plaintiff can establish every element of a 1st amendment retaliation claim against Defendant Kline in relation to the restraining order against Plaintiff that Defendant Kline obtained on August 14, 2015 and was in place until mid-October, 2015.

81. The acquisition and maintaining of this restraining order was motivated by a desire to retaliate against Plaintiff for filing two separate personnel complaints against Defendant Kline.

82. There is no question that the speech engaged in by Plaintiff was protected speech, as the ability to report misconduct by governmental official and seek redress is core First Amendment speech.

83. The acquisition of the restraining order by Defendant Kline constitutes adverse action against the Plaintiff as it restricted Plaintiff's movement and made it impossible for Plaintiff to seek redress for any wrongs committed by Defendant Kline.

84. The restraining order made it a criminal act for Plaintiff to go to the place of employment of Defendant Kline. As such, the restraining order made it impossible for Plaintiff to be able to pursue redress from any future misconduct on the part of Defendant Kline. This is because Plaintiff would have to go to Defendant Kline's place of work in order to file any grievance against him, something which the restraining order made illegal.

85. The casual connection between the protected speech engaged in by Plaintiff and the adverse action taken by Defendant Kline is clear. In response to Plaintiff filing grievances against Defendant Kline on two occasions, Defendant Kline sought out a

restraining order which would have made it impossible for Plaintiff to file any future grievances against Defendant Kline. There simply is no legitimate reason for Defendant Kline to have procured a restraining order against Plaintiff. Plaintiff had never made any threats to Defendant Kline, and posed no danger to Defendant Kline. Merely because Defendant Kline saw Plaintiff as a nuisance, due to the previous personnel complaints filed against Defendant Kline, Defendant Kline procured a restraining order against Plaintiff simply for engaging in protected speech.

WHEREFORE, the Plaintiff demands judgment on the above counts against the defendants, their units, their officers, employees, against and other persons acting in concert or participation with them as stated above, and award the following amounts:

A. Compensatory damages in favor of the Plaintiffs in an amount to be determined by a jury;
B. Exemplary damages in favor of the Plaintiff;
C. Costs of this action, including reasonable attorney fees to the Plaintiff Pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, U.S.C. 1988 (1976); and
D. Such other relief as the court may deem appropriate

DATED:   Buffalo, New York
         October 4, 2018

THE LAW OFFICES OF MATTHEW ALBERT ESQ.

By:/s/ Matthew Albert
MATTHEW ALBERT, ESQ.
Attorney for Plaintiff
Office and P.O. Address
254 Richmond Ave
Buffalo, New York 14222
(716) 445-4119