UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THOMAS THOMPSON,

                             Plaintiff,

                v.

KENNETH KLINE,
New York State Police Trooper, et al.,

                       Defendants.

_____

<u>DECISION AND ORDER</u>

18-CV-6719L

## <u>INTRODUCTION</u>

Plaintiff Thomas Thompson ("plaintiff" or "Thompson") filed this 19-page complaint, consisting of 85 separate paragraphs with 195 pages of exhibits, including the minutes of a 50-h Examination[1], against four New York State Troopers, a former Assistant District Attorney, and two private citizens, claiming a broad conspiracy by the defendants spanning three years from 2014 to 2017. The alleged "conspiracy" was to violate Thompson's civil rights in violation of 42 United States Code, Section 1983. At the heart of plaintiff's complaint is the allegation that he was arrested and charged with several New York State law violations solely in retaliation for his having filed two civilian complaints against one of the New York State Troopers. The named

_____

[1] Thompson's 50-h Examination was held pursuant to New York General Municipal Law § 50-h. (*See* Dkt. # 1-3). That law states that a when a claimant files a "notice of claim" against a county (here, Thompson's claim against the County of Steuben, the County of Steuben District Attorney's Office, County of Steuben Assistant District Attorney Todd Casella, and New York State Trooper James Collings regarding many of the allegations contained in his federal complaint), the county "shall have the right to demand an examination of the claimant relative to the occurrence and extent of the injuries of damages for which claim is made, which examination shall be upon oral questions unless the parties otherwise stipulate." N.Y. GEN. MUN. LAW § 50-h(1).

defendants are New York State Trooper Kenneth Kline ("Trooper Kline"), New York State Trooper James Collings ("Trooper Collings"), former Steuben County Assistant District Attorney Todd J. Casella ("ADA Casella"), New York State Police Sergeant John Roe ("Sergeant Roe"), New York State Police Lieutenant Michael McDarby ("Lieutenant McDarby"), and private citizens Patrick Mosko ("P. Mosko") and Shawn Mosko ("S. Mosko") (collectively, the "defendants").

Although plaintiff's prolix complaint sets forth many facts which plaintiff contends supports his broad "conspiracy" theory, the complaint really boils down to two separate incidents. The first relates to a traffic stop on March 27, 2015 by Trooper Kline which resulted in his issuance of a traffic ticket for a bald tire on a Chevy Tahoe driven by Thompson. Plaintiff took exception to the traffic ticket and filed a civilian complaint against Trooper Kline. In doing so, he filed a sworn statement on April 10, 2015. Thompson was later indicted for filing a false instrument relating to that statement.

The second incident about which plaintiff complains is his arrest on February 26, 2017 for allegedly assaulting his then-girlfriend, Stacey Taber ("Taber"). The alleged assault – which left Taber bloodied – was reported by Taber and Thompson and a different New York State Trooper, Trooper James Collings, and an ambulance with EMTs responded to the residence. Taber was transported to a hospital for treatment and it was that domestic incident which resulted in Thompson being charged with Assault in the third degree.

Thompson surmises and now alleges that these charges were improper, made without probable cause and were simply retaliatory acts done in retribution or retaliation for Thompson filing two civilian complaints against Trooper Kline. The civilian complaints against Trooper Kline related to a complaint that he was allegedly on plaintiff's property without permission in

2

August 2014 and that Trooper Kline executed the March 27, 2015 traffic stop which resulted from the bald tire without probable cause.

Pending are three motions: first, Trooper Collings's, Trooper Kline's, Lieutenant McDarby's and Sergeant Roe's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. # 17); second, P. Mosko's and S. Mosko's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. # 18); and third, ADA Casella's motion for judgment on the pleadings pursuant to Rule 12(c) (Dkt. # 25).

For the following reasons, the motions are granted, and Thompson's complaint is dismissed.

## DISCUSSION

### I.   Legal Standards

#### A.   Standard on a Motion to Dismiss

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*   In deciding a motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff.  *See Trs. of Upstate New York Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S.Ct. 2279 (2017).   A court may also "consider any written instrument attached to the [c]omplaint as an exhibit or any statements or documents

3

incorporated in it by reference." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014) (alterations and quotations omitted).

### B.    Standard on a Motion for Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed[,] but early enough not to delay trial." FED. R. CIV. P. 12(c).[2]   The standard applicable to Rule 12(c) motions mirrors that for motions brought under Rule 12(b)(6). *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

## II.    Trooper Colling's, Trooper Kline's, Lieutenant McDarby's and Sergeant Roe's Motion to Dismiss

### A.    Claims against Trooper Collings

Thompson alleges three causes of action against Trooper Collings: (1) conspiring with ADA Casella to have Thompson unlawfully incarcerated (Dkt. # 1 at ¶¶ 43-49); (2) false imprisonment (*id.* at ¶¶ 56-62); and (3) malicious prosecution (*id.* at ¶¶ 63-70).   Each of these claims are based on the following facts.[3]

On February 26, 2017, Thompson and Taber were involved in a domestic dispute, which, even accepting Thompson's account of the incident, turned violent.   Thompson claims that the couple had an argument occasioned by his efforts to limit Taber's alcohol use.   (Dkt. # 1 at ¶ 37; Dkt. # 1-3 at 70-71).   According to Thompson, Taber objected to that effort and "began to attack" him.   (Dkt. # 1 at ¶ 37).   Thompson admits that to defend himself, he then "pushed" Taber at least once causing her to fall and "str[ike]" and "cut" her head.   (Dkt. # 1 at ¶ 37; Dkt. # 1-3 at 71).   Apparently both Thompson and Taber called the police reporting the incident, which resulted in

---

[2]  The pleadings in this case are closed as they relate to the Moskos and ADA Casella; the Moskos filed their answer on December 11, 2018 (*see* Dkt. # 14), and ADA Casella filed his answer on January 3, 2019 (*see* Dkt. # 20).

[3]  For purposes of resolving the pending motions, the factual allegations relevant to these claims are taken from the complaint and portions of Thompson's 50-h Examination held on December 8, 2017, which is attached as an exhibit to Thompson's complaint.  (*See* Dkt. # 1-3).

both Trooper Collings and another officer, as well as EMTs to respond to the residence.  (Dkt. # 1-3 at 73-74).

Trooper Collings was required to "separate[]" Thompson and Taber upon his arrival (Dkt. # 1 at ¶ 37), and because of Taber's bloodied condition, she was placed on a gurney and transported to a hospital (Dkt. # 1-3 at 73-74).  After the EMTs took Taber to the hospital, Trooper Collings obtained a statement from Thompson about the incident.  (Dkt. # 1-3 at 74).  Trooper Collings then called ADA Casella and asked what charge should be logged against Thompson.  (Dkt. # 1 at ¶ 38).  ADA Casella advised Trooper Collings to charge Thompson with Assault in the third degree. (*Id.*).  Afterwards, Trooper Collings obtained Taber's statement at the hospital, which Thompson alleges was coerced.  (*Id.* at ¶ 39).

Thompson was in fact arrested and charged with Assault in the third degree on February 26, 2017 (although he does not specify exactly when his arrest took place) (Dkt. # 1 at ¶ 58; Dkt. # 1-3 at 97-98), and the following day, Trooper Collings completed a criminal information containing that charge (the "Assault Charge") (Dkt. # 17-1 at 9).  On or about July 11, 2017, a New York State court dismissed this charge without prejudice "due to facial insufficiency of the accusatory instrument."  (Dkt. # 1 at ¶ 40; Dkt. # 1-4 (state court's "certificate of disposition")).

Plaintiff has sued Trooper Collings for false arrest or false imprisonment relating to the Assault Charge, as well as malicious prosecution on that charge.  In addition, plaintiff alleges that Trooper Collings and ADA Casella conspired to have him arrested without probable cause relating to the assault on Taber.  For a variety of reasons, all these claims lack merit and must be dismissed.

1.      **False Imprisonment**

Trooper Collings maintains that Thompson's false imprisonment claim fails because he had probable cause to arrest Thompson on February 26, 2017 and that, alternatively, he is entitled to qualified immunity.  (Dkt. # 17-2 at 9-14).  I agree with both arguments.

To state a claim for false arrest or false imprisonment under section 1983, a plaintiff must allege that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (alterations and quotations omitted), *cert. denied*, 517 U.S. 1189 (1996).  "The existence of probable cause to arrest . . . is a complete defense to an action for false arrest."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quotations omitted).  "Probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Jenkins v. City of New York*, 478 F.3d 76, 84-85 (2d Cir. 2007) (alteration and citation omitted).  Probable cause is assessed on an "objective basis," and "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."  *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) (citation omitted).  Moreover, "[w]hen information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity."  *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (citation omitted).

In my view, Trooper Collings had probable cause to arrest Thompson for assault on February 26, 2017.  In relevant part, a person commits the misdemeanor of Assault in the third degree in New York when "(1) [w]ith intent to cause physical injury to another person, he causes

6

such injury to such person[,] or (2) [h]e recklessly causes physical injury to another person." N.Y. PENAL LAW §§ 120.00(1)-(2).

Here, Thompson and Taber each reported the domestic dispute to authorities, both evidently feeling the need for protection from the other. Upon receiving these complaints and arriving to the scene, Trooper Collings separated the two, personally observed Taber in a bloodied physical condition (compared to Thompson's apparently unremarkable physical condition), and witnessed the EMTs transport Taber to the hospital for treatment. In addition, although Thompson reported to Trooper Collings that he acted in self-defense, Thompson admitted that he had pushed Taber at least once, causing her to strike and cut her head open.

These facts alone demonstrate that Trooper Collings possessed sufficient knowledge and information to reasonably believe that Thompson had assaulted Taber. *See, e.g.*, *Curley*, 268 F.3d at 69-70 (probable cause existed where victim reported assault to police officer and victim had blood on his lip, even though involved parties presented conflicting accounts of incident; "[a]lthough a better procedure may have been for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version was wrong before arresting him"); *Fox v. City of New York*, 2019 WL 3003993, *4 (S.D.N.Y. 2019) (dismissing plaintiff's false arrest claim at the pleading stage; "[p]laintiff was arrested for Assault in the Third Degree based on the complaining victim's statement and the injuries the victim sustained[;] . . . [t]he complaining victim's statements that [p]laintiff punched and kicked him, along with the observable injuries to his face and ear, established probable cause to arrest [p]laintiff"). Based on Trooper Collings's observations, including the bloody condition of Taber and the fact that she reported the domestic incident to the authorities, he certainly had reasonably trustworthy information about the facts to warrant the arrest of Thompson for the assault.

Accordingly, Trooper Collings had probable cause to arrest Thompson on February 26, 2017, and Thompson's claim of false imprisonment thus necessarily fails.  *See Weyant*, 101 F.3d at 852.

Although I believe probable cause arrest clearly existed, I believe the facts also support the conclusion that Trooper Collings is entitled to qualified immunity.  This is precisely the type of situation where officers should be shielded from actions for civil damages based on decisions made based on facts presented at the time.  The test is whether it was objectively reasonable for an officer to believe that probable cause existed or that reasonable officers might differ.  The subjective intent or motives of the officer have little bearing on the test.

Qualified immunity shields public officials from an action for civil damages, to the extent that their challenged acts do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "An officer is entitled to qualified immunity against a suit for false arrest if he can establish that he had 'arguable probable cause' to arrest the plaintiff."  *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015).  "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  *Id.* (citation omitted).  "In deciding whether an officer's conduct was 'objectively reasonable' for purposes of qualified immunity, [courts] look to the information possessed by the officer at the time of the arrest, but . . . not . . . the subjective intent, motives, or beliefs of the officer."  *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010) (quotations omitted).  Because qualified immunity is "an affirmative defense [that] . . . reflects an immunity from suit rather than a mere defense to liability[,] . . . it is appropriate to decide the issue of qualified immunity, when raised, at an early stage of the litigation, such as when deciding a

pre-answer motion to dismiss." *Betts v. Shearman*, 2013 WL 311124, *4 (S.D.N.Y. 2013) (emphasis and quotations omitted), *aff'd*, 751 F.3d 78 (2d Cir. 2014).

The allegations detailed above safely establish that Trooper Collings, at the very least, had arguable probable cause to arrest Thompson for assault on February 26, 2017: a domestic dispute was reported, authorities observed that only Taber was injured and required hospital treatment, and Thompson admitted that he had pushed Taber at least once during the dispute.

Furthermore, the fact that Trooper Collings consulted with ADA Casella prior to arresting Thompson supports the reasonableness of his actions. "Consulting a prosecutor may not give an officer absolute immunity from being sued for false arrest, . . . but it goes far to establish qualified immunity. Otherwise the incentive for officers to consult prosecutors – a valuable screen against false arrest – would be greatly diminished." *Kijonka v. Seitzinger*, 363 F.3d 645, 648 (7th Cir. 2004) (Posner, *J.*) (affirming dismissal of section 1983 false arrest claim against police officer on qualified immunity grounds; "the officer consulted the prosecuted before making the arrest[;] [h]aving received a formal complaint, [defendant officer] was reluctant to drop the matter without such a consultation and having consulted and been instructed to arrest [plaintiff] he had a reasonable basis for believing that he had probable cause to make the arrest"); *see also Strawn v. Holohan*, 2008 WL 65586, *6 (N.D.N.Y. 2008) ("the fact that [investigator] consulted with the District Attorney's office prior to [plaintiff's] arrest, while not dispositive of the issue, is a factor supporting the reasonableness of [defendant officer's] actions") (footnote omitted).

Accordingly, Trooper Collings's arrest of Thompson was objectively reasonable, based on his own knowledge of the situation and his consultation with ADA Casella. Trooper Collings is thus, alternatively, also entitled to qualified immunity for Thompson's false imprisonment claim.

## 2.   __Conspiring to Unlawfully Incarcerate__

Thompson also alleges that Trooper Collings and ADA Casella conspired to "unlawfully incarcerate" him for the Assault Charge.  (Dkt. # 1 at ¶¶ 43-49).[4]  Thompson's claim fails.

To state a section 1983 conspiracy claim, a plaintiff must allege "(1) an agreement between two or more state actors or between a state actor and a private entity[,] (2) to act in concert to inflict an unconstitutional injury[,] and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

Because conspiracy claims are "so easily made and can precipitate such protracted proceedings[,] . . . detailed fact pleading is required to withstand a motion to dismiss." *Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir. 1981).  Accordingly, "[a] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993) (citation omitted). Rather, "allegations of a conspiracy must be pleaded with specificity, a heightened standard." *Cox v. City of New Rochelle*, 2019 WL 3778735, *5 (S.D.N.Y. 2019) (alterations and quotations omitted); *Brewster v. Nassau Cty.*, 349 F. Supp. 2d 540, 547 (E.D.N.Y. 2004) ("Claims alleging conspiracies to violate civil rights are held to a heightened pleading standard.").

Thompson has not met this "heightened pleading standard."  Virtually nothing is offered by Thompson to suggest a conspiracy.  Thompson's speculative musings do not meet the required pleading requirement.  According to the complaint, Trooper Collings and ADA Casella spoke with each other a total of one time about Thompson.  As mentioned above, after responding to the

---

[4]  Trooper Collings does not appear to specifically respond to this claim in his motion papers.  (*See generally* Dkt. # 17-2 at 9-14).  However, ADA Casella moves to dismiss this claim, in part, based on his view that Thompson has not sufficiently stated a claim for conspiracy (*see* Dkt. # 25-2 at 14-15; Dkt. # 29 at 7-8), to which Thompson responded (*see* Dkt. # 28 at 6-8).  I find ADA Casella's argument to be persuasive, and that it applies equally to Trooper Collings, as the conspiracy claim against both these defendants is based on the same allegations.

domestic incident on February 26, 2017, observing the scene, and speaking with Thompson, Trooper Collings called ADA Casella and inquired as to any charges to bring against Thompson. (Dkt. # 1 at ¶ 38).  That is the *entire* extent of Trooper Collings's communication with ADA Casella alleged in the complaint.

Without more, this single phone call does not amount to an "agreement" to inflict a constitutional injury for purposes of a conspiracy.  Simply put, Trooper Collings called ADA Casella for advice and direction regarding a domestic dispute where only one of the involved parties was injured, and the other involved party admitted to causing at least some of the injuries. The conclusion that Thompson had assaulted Taber, at the time Trooper Collings and ADA Casella spoke, was therefore at least objective reasonable, and any suggestion otherwise that these two defendants conspired to violate Thompson's constitutional rights during their phone call is merely conclusory.  *See Brown v. Seniuk*, 2002 WL 32096576, *4 (E.D.N.Y. 2002) (to state a conspiracy, plaintiff must allege "specific facts that the defendants shared a unity of purpose or a common design to injure the plaintiff, not mere conclusory allegations").

Moreover, there is nothing inherently suspicious about this type of communication between an arresting officer and a prosecutor; not only is it routine, but it is also an *encouraged* practice to minimize instances of false arrest.  *See, e.g.*, *Kijonka*, 363 F.3d at 648 (noting that officers consulting with prosecutors prior to making an arrest is a "valuable screen against false arrest"). If a claim of conspiracy could survive based – as here – solely on the fact that an officer sought input from a prosecutor before executing an arrest, not only would the "heightened pleading standard" for a civil rights conspiracy claim be rendered meaningless, but the incentive for arresting officers to engage in such a practice would disappear.

Aside from the single, routine phone call between Trooper Collings and ADA Casella, Thompson has alleged nothing more to suggest that these defendants entered into an agreement to violate Thompson's constitutional rights.  Thompson's conspiracy claim is therefore dismissed.

### 3.      Malicious Prosecution

Trooper Collings maintains that Thompson's malicious prosecution claim fails because the allegations do not show that the Assault Charge terminated in Thompson's favor.  (Dkt. # 17-2 at 12-13).  I agree.

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment . . . and must establish the elements of a malicious prosecution claim under state law."  *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010).  Under New York law, a plaintiff must sufficiently allege "(1) the initiation or continuation of a criminal proceeding against plaintiff[,] (2) termination of the proceeding in plaintiff's favor[,] (3) lack of probable cause for commencing the proceeding[,] and (4) actual malice as a motivation for defendant's actions."  *Id.* at 161 (quotations and citations omitted).  It is the plaintiff's burden to show that the underlying criminal proceeding "terminated favorably."  *Virgil v. City of New York*, 2019 WL 4736982, *7 (E.D.N.Y. 2019) (citations omitted). To do so, he must allege that the proceedings terminated "in a manner indicating his innocence." *Lanning v. City of Glens Falls*, 908 F.3d 19, 25, 29 (2d Cir. 2018); *Black v. Petitinato*, 761 Fed. Appx. 18, 23 (2d Cir. 2019) (summary order) ("Where the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused, for these purposes, only when its final disposition is such as to indicate the innocence of the accused.") (citation omitted).

Here, Thompson has not sufficiently alleged that the Assault Charge terminated in his favor.  Rather, he repeatedly alleges in his complaint that the Assault Charge was dismissed "due

to the facial insufficiency of the accusatory instrument."  (Dkt. # 1 at ¶ 67; *see also id.* at ¶¶ 40, 61).  It is well established, however, that such a dismissal is "not sufficiently favorable to the accused to be indicative of innocence."  *Black*, 761 Fed. Appx. at 23 (affirming district court's dismissal of plaintiff's malicious prosecution claim where underlying criminal charges were dismissed for facial insufficiency); *Culberth v. Town of E. Hampton New York*, 2020 WL 4587731, *4 (E.D.N.Y.) (dismissing plaintiff's malicious prosecution claim at the pleading stage where the underlying criminal charges against him were dismissed "for facial insufficiency" and plaintiff thus could not "demonstrate that his underlying criminal proceeding terminated in his favor") (collecting cases), *report and recommendation adopted by*, 2020 WL 2537263 (E.D.N.Y. 2020).

Despite his own allegations, Thompson argues in his opposition papers that the Assault Charge was "effectively" dismissed based on New York's speedy trial statute – New York Criminal Procedure Law ("CPL") 30.30.  (*See* Dkt. # 23 at 6-8).  Yet this supposed basis for dismissal of the Assault Charge appears *nowhere* in the complaint, and Thompson is not permitted to amend his complaint through his opposition papers.  *See, e.g.*, *Mayzick v. Cty. of Nassau*, 32 F. Supp. 3d 399, 404 n.1 (E.D.N.Y. 2014) (plaintiff's argument contained in opposition papers was "an invalid attempt to use motion briefing to amend the complaint").

Furthermore, it appears that Thompson only sought dismissal before the state court based on facial insufficiency and made no motion to dismiss on speedy trial grounds.  (*See* Dkt. # 23-2 at 1).  That appeared to be the sole basis for the requested dismissal.  Thompson's new argument is therefore rejected for all these reasons.

Accordingly, Thompson has not alleged that the Assault Charge terminated in his favor. His malicious prosecution claim against Trooper Collings is therefore dismissed.

**B.**      **Claim against Trooper Kline, Lieutenant McDarby and**
         **Sergeant Roe for Malicious Prosecution**

Thompson's sole claim against Trooper Kline, Lieutenant McDarby and Sergeant Roe is for malicious prosecution, in relation to his state-court prosecution for Offering a False Instrument for Filing in the first degree (the "False Instrument Charge").  (Dkt. # 1 at ¶¶ 71-78).[5]

According to the complaint, Sergeant Roe and Lieutenant McDarby "formally charged" Thompson with the False Instrument Charge on September 1, 2015, in relation to an April 10, 2015 statement Thompson gave in support of his second personnel complaint against Trooper Kline.  (Dkt. # 1 at ¶¶ 23, 28).  A grand jury indicted Thompson on December 8, 2015.  (Dkt. # 1 at ¶ 28).  On February 25, 2016, however, the state court dismissed this indictment without prejudice because "the prosecution had failed to provide sufficient evidence to support each and every count of the indictment."  (*Id.* at ¶ 29).  Subsequently, a second grand jury indicted Thompson on the False Instrument Charge, which Thompson was "unable to get . . . dismissed." (*Id.* at ¶ 32).  Thompson's trial began on July 18, 2016, but the jury returned a verdict of not guilty. (*Id.* at ¶¶ 32, 36).

I agree with the named defendants that the malicious prosecution claim relating to the False Instrument Charge must be dismissed.  Two separate state grand juries considered the evidence and found it to be sufficient and twice returned an indictment against Thompson.  These indictments create a presumption of probable cause which is fatal to Thompson's claim of malicious prosecution.  The fact that Thompson was later acquitted at trial is of no moment.

---

[5] Thompson also pled a First Amendment retaliation claim against Trooper Kline (*see* Dkt. # 1 at ¶¶ 79-85), which Trooper Kline moved to dismiss (*see* Dkt. # 17-2 at 5-9).  In response, Thompson explicitly "d[id] not contest the dismissal" of this claim.  (Dkt. # 23 at 1).  Based on this representation, the retaliation claim is considered withdrawn, or alternatively dismissed as abandoned.  *See, e.g.*, *Baptiste v. Griffin*, 2019 WL 5635808, *5 (S.D.N.Y. 2019) (dismissing plaintiff's claims as "abandoned" where he "failed to address [d]efendants' argument for dismissal"; "[w]hen a plaintiff fails to address [d]efendants' arguments in support of dismissing a claim, it is deemed withdrawn or dismissed as abandoned") (alterations and quotations omitted).

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Manganiello*, 612 F.3d at 161-62 (citation omitted). "Once a suspect has been indicted[,] the law holds that the Grand Jury action creates a presumption of probable cause," *Rothstein v. Carriere*, 373 F.3d 275, 282-83 (2d Cir. 2004) (citation omitted), which "may *only* be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith," *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (quotations omitted). "[A]llegations of misconduct will be sufficient to meet plaintiff's pleading obligations as long as they are appropriately specific and do not amount to 'mere "conjecture" and "surmise" that his indictment was procured as a result of conduct undertaken by the defendants in bad faith.'" *Demosthene v. City of New York*, 2019 WL 2436681, *4 (E.D.N.Y. 2019) (quoting *Savino*, 331 F.3d at 73). Moreover, such misconduct must have occurred in the grand jury proceedings. *See Baergas v. City of New York*, 2006 WL 8461390, *5 (S.D.N.Y. 2006) (citing *Rothstein*, 373 F.3d at 284).

Thompson acknowledges that he was indicted not once, but twice, by a grand jury on the False Instrument Charge (Dkt. # 1 at ¶¶ 28-32), which creates a presumption of probable cause. And while the presumption of probable cause can be rebutted based on a demonstration of misconduct, there are no such allegations here, as Thompson does not allege that Trooper Kline, Lieutenant McDarby or Sergeant Roe committed any misconduct during either of the grand jury proceedings. Instead, Thompson merely alleges that there was insufficient evidence to prosecute him for the False Instrument Charge. (*Id.* at ¶ 77). Yet that is not sufficient to overcome the presumption of probable cause. *See, e.g.*, *Lewis v. City of New York*, 2013 WL 6816615, *8 (E.D.N.Y. 2013) (dismissing plaintiff's malicious prosecution claim at the pleading stage; "[p]laintiff alleges nothing about how his indictment was procured; he alleges only that [d]efendant

[o]fficers charged him without admissible evidence and prosecuted him without probable cause"), *aff'd*, 591 Fed. Appx. 21 (2d Cir. 2015) (summary order).

Moreover, the fact a court found the initial indictment defective and dismissed it, without prejudice, for insufficient evidence is clearly not sufficient to rebut probable cause. The dismissal on that ground does not rebut probable cause. *See Hillary v. St. Lawrence Cty.*, 2019 WL 977876, *15 n. 27 (N.D.N.Y. 2019) (noting that it would be "dubious" if the presumption of probable cause could be rebutted where initial indictment is dismissed without prejudice and based on no misconduct on the part of the relevant defendants, and a second indictment is later returned by another grand jury); *Bertuglia v. City of New York*, 133 F. Supp. 3d 608, 626-27 (S.D.N.Y. 2015) (plaintiffs could not overcome presumption of probable cause raised by grand jury indictment even where the indictment was subsequently dismissed by state court judge due to "insufficient evidence to proceed with a criminal prosecution and trial[;] [the state court judge] did not conclude that there was the type of severe misconduct that New York law requires to vitiate the presumption of probable cause afforded by a grand jury indictment"), *aff'd*, 672 Fed. Appx. 96 (2d Cir. 2016) (summary order), *cert. denied*, 138 S.Ct. 78 (2017).

Accordingly, in the absence of any allegations of misconduct on the part of these defendants in the procurement of the False Instrument Charge indictments, Thompson's malicious prosecution claim is dismissed.

### III.    P. Mosko's and S. Mosko's Motion for Judgment on the Pleadings

Thompson pleads one cause of action against P. Mosko and S. Mosko (the "Moskos"), who were "key witnesses" for the prosecution at his False Instrument Charge trial: that they conspired with ADA Casella to give false testimony against Thompson. (Dkt. # 1 at ¶¶ 33, 50-55). These defendants allegedly reached this agreement during a pre-trial meeting. (*Id.* at ¶¶ 35, 53 ("There

is evidence in the transcript of the testimony given by [S.] Mosko at [Thompson's] July 18, 2016 trail [sic] which suggests that [ADA] Casella met with the Moskos prior to [Thompson's] trial, and that at this meeting, [ADA] Casella instructed the Moskos what they needed to say to see that [Thompson] was convicted, despite the fact such statements were not true.")).  It appears that this claim, like others, is based on pure speculation and surmise.  Although Thompson frames this claim as a nefarious conspiracy with ADA Casella, it is essentially a subjective belief by Thompson that the Moskos gave false testimony at this trial.  Of course at trial, Thompson's attorney had ample opportunity to cross-examine the Moskos about their trial testimony.

The Moskos contend that Thompson's claim against them fails for several reasons as a matter of law.  I agree.  There is no basis for any claim against the Moskos.

Initially, while Thompson alleges that both Moskos met with ADA Casella prior to his trial, the evidence he explicitly relies upon in making this allegation suggests that only S. Mosko – not P. Mosko – met with ADA Casella.  (*See* Dkt. # 1 at ¶¶ 35, 54 (citing Dkt. # 1-2 at 42-43 (trial testimony of S. Mosko suggesting that he met with ADA Casella prior to trial))).  In addition, unlike with S. Mosko, Thompson has not alleged what specific testimony P. Mosko offered that was false – a rather glaring omission.  In other words, Thompson has only put forth conclusory and vague allegations that a conspiracy existed between ADA Casella and P. Mosko.  Accordingly, the conspiracy claim against P. Mosko is dismissed.  *See Markham v. Bezinque*, 2020 WL 3316104, *6 (W.D.N.Y. 2020) ("Far from including any facts regarding [defendant's] personal involvement in any conspiracy, [p]laintiff merely alleges that [defendant] 'willfully participated and contributed to the conspiracy against [p]laintiff by submitting false sworn testimony.' . . . That is not enough to survive a motion to dismiss.").

In addition, to the extent that Thompson's conspiracy claim is based on the substance of S. Mosko's trial testimony, it is well established that he is immune from liability for this testimony. *See San Filippo v. U.S. Co. of New York, Inc.*, 737 F.2d 246, 254 (2d Cir. 1984) ("a witness has absolute immunity from § 1983 liability based on the substance of his trial testimony"), *cert. denied*, 470 U.S. 1035 (1985); *see also Cox*, 2019 WL 3778735 at *5 (collecting cases).

Moreover, to the extent that the conspiracy claim is based on S. Mosko's and ADA Casella's alleged pre-trial meeting, I find that Thompson has failed to meet the "heightened" pleading standard required in this context.  Meetings between the trial prosecutor and prospective witnesses in criminal trials occur in virtually every criminal trial.  In fact, it would seem to be highly unusual, if not careless, for a prosecutor *not* to meet with proposed witnesses.  Notably, the Second Circuit has indicated that there is "nothing suspicious or improper in such meetings, which are routine and necessary in the preparation of evidence," and that "[i]f the mere allegation of their occurrence is sufficient to create a material issue of fact as to whether something improper took place during them . . . virtually every witness for the government could face the burden of defending a costly civil suit charging 'conspiracy' to give false testimony."  *San Filippo*, 737 F.2d at 256.  It is thus "imperative for courts to examine with great care any suit charging that prosecution witnesses conspired with the prosecutor, and to dismiss on pre-trial motion those that are clearly baseless."  *Id.*

Examining this claim as I must with "great care," at bottom, Thompson's claim is premised on S. Mosko's unfavorable or false testimony at trial and the fact that S. Mosko met with ADA Casella prior to the trial.  There is nothing here.  Without more, these vague and general allegations do not amount to a conspiracy and are "clearly baseless."  *See San Filippo*, 737 F.2d at 256 (dismissing plaintiff's conclusory allegations of conspiracy; "at no point in the proceedings has

plaintiff alleged one shred of evidence in support of his conclusory assertion of conspiracy, beyond the fact that [prosecutor and detective] met with defendants prior to their grand jury testimony"); *LoPorto v. Cty. of Rensselaer*, 2018 WL 4565768, *11 (N.D.N.Y. 2018) ("[p]laintiff's allegation that a witness met with a prosecutor is not enough to support a claim of conspiracy").[6]

Therefore, P. Mosko's and S. Mosko's motion for judgment on the pleadings is granted, and Thompson's conspiracy claim against them is dismissed.

## IV.   ADA Casella's Motion for Judgment on the Pleadings

Thompson pleads two conspiracy claims against ADA Casella: first, that he conspired with Trooper Collings to unlawfully incarcerate Thompson in relation to the Assault Charge (Dkt. # 1 at ¶¶ 43-49); and second, that he conspired with the Moskos to provide false testimony at Thompson's False Instrument Charge trial (*id.* at ¶¶ 50-55).   ADA Casella maintains that he is entitled absolute immunity and/or qualified immunity on these claims, and that the allegations of conspiracy are insufficient to state a claim as a matter of law.   (*See generally* Dkt. # 25-2; Dkt. # 29).   I agree with ADA Casella.

As discussed above, Thompson's claims against Trooper Collings and ADA Casella, and against the Moskos and ADA Casella, fail as a matter of law.   (*See supra*, §§ II.A.2, III).

Moreover, and in any event, I also find that ADA Casella is entitled to immunity from Thompson's conspiracy claims.   As it relates to the conspiracy claim against ADA Casella and the

---

[6]  Alternatively, Thompson's conspiracy claim fails because he has not alleged that the Moskos entered willingly into an agreement with ADA Casella to provide false testimony.   Rather, Thompson alleges that prior to his trial, ADA Casella met with the Moskos and "*instructed* [them] to give false testimony against [Thompson] . . . *under the force of threat*."   (Dkt. # 1 at ¶ 55 (emphasis supplied)).   Yet to plead a conspiracy, a plaintiff must allege that "defendants acted in a *willful manner*, culminating in an agreement, understanding or meeting of the minds, that violated [his] rights, privileges or immunities secured by the Constitution or federal courts."   *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 507-08 (S.D.N.Y. 2008) (quotations omitted) (emphasis supplied), *aff'd*, 461 Fed. Appx. 18 (2d Cir. 2012) (summary order).   Clearly, if ADA Casella threatened the Moskos into agreeing to provide false testimony against Thompson, they did not do so in a "willful manner."   On this alternative basis, Thompson's conspiracy claim against the Moskos fails as a matter of law.

Moskos – that they conspired at a pre-trial meeting to produce false testimony at trial – there can be no dispute that ADA Casella is entitled to absolute immunity.  *See Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) ("absolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate[;] [t]his would even include, for purposes of this case, *allegedly conspiring to present false evidence at a criminal trial*") (emphasis supplied).  This claim is therefore dismissed for this alternative reason.[7]

As to Thompson's conspiracy claim against ADA Casella and Trooper Collings relating to the February 26, 2017 arrest of Thompson for assaulting Taber, ADA Casella urges that he is entitled to qualified immunity under clearly established law because as a prosecutor, he was acting in an investigatory capacity.  (*See* Dkt. # 29 at 5-7).

I find that ADA Casella is entitled to qualified immunity.  According to the complaint, it is clear that the entire extent of ADA Casella's involvement in the Assault Charge was limited to discussing with Trooper Collings the circumstances of the domestic dispute between Thompson and Taber, and advising Trooper Collings on whether an arrest for assault was appropriate.  (*See* Dkt. # 1 at ¶ 38).[8]  Those circumstances – including that both parties reported a domestic dispute, Taber was in a bloodied condition and required hospital treatment, and Thompson admitted that he pushed Taber during their argument – were personally known to Trooper Collings and presumably communicated to ADA Casella during their phone call.  It was therefore "objectively

---

[7]  In addition, Thompson has clearly abandoned this conspiracy claim against ADA Casella.  Thompson explicitly states in his opposition to ADA Casella's motion that he "specifically contest[s] the dismissal of the first cause of action against [ADA Casella]," which is the claim alleged against ADA Casella and Trooper Collings.  (Dkt. # 28 at 1).  Moreover, the substance of Thompson's opposition focuses entirely on that conspiracy – not the conspiracy against the Moskos and ADA Casella.  For this reason, as well, the second conspiracy claim against ADA Casella is dismissed.  *See, e.g.*, *Baptiste*, 2019 WL 5635808 at *5.

[8]  In his opposition papers, Thompson maintains that during ADA Casella's and Trooper Collings's phone call, ADA Casella "advised [Trooper] Collings as to what was needed from the victim statement in order to criminally charge [Thompson]."  (Dkt. # 28 at 4).  However, that allegation appears nowhere in the complaint.

20

reasonable" for ADA Casella "to believe that probable cause existed" to arrest Thompson for assault, entitling him to qualified immunity on this conspiracy charge. *See Day v. Morgenthau*, 909 F.2d 75, 77 (2d Cir. 1990) (prosecutor entitled to qualified immunity for claims of false arrest and illegal search and seizure "if, based on the facts known to [prosecutor], it was objectively reasonable for [him] to believe that probable cause existed for the arrest").

Accordingly, and alternatively, ADA Casella is entitled to qualified immunity against Thompson's first conspiracy claim.

## CONCLUSION

For all these reasons, Trooper Collings's, Trooper Kline's, Lieutenant McDarby's and Sergeant Roe's motion to dismiss (Dkt. # 17) is granted, P. Mosko's and S. Mosko's motion for judgment on the pleadings (Dkt. # 18) is granted, and ADA Casella's motion for judgment on the pleadings (Dkt. # 25) is granted.  Thompson's complaint is therefore dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        December 3, 2020.

21